UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JANE DOE, <br><br> *Plaintiff*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States of America; <br><br> KRISTI NOEM, in her official capacity as Secretary of the U. S. Department of Homeland Security; <br><br> TODD LYONS, in his official capacity as Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; <br><br> SCOTT LADWIG, in his official capacity as Acting Field Office Director of the New Orleans Field Office of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; <br><br> PAMELA BONDI, in her official capacity as the Attorney General of the United States; <br><br> MARCO RUBIO, in his official capacity as United States Secretary of State. <br><br> *Defendants*. | Civil Action No. <br><br> Judge <br><br> Magistrate Judge |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT**

## INTRODUCTION

1. Plaintiff Jane Doe[1] ("Ms. Doe") files this complaint for injunctive relief and declaratory judgment because Defendants violated Ms. Doe's rights to statutory due process by (i) failing to provide adequate notice of potential third countries for removal, (ii) failing to conduct fear interviews related to these third countries, (iii) refusing to communicate with counsel, (4) unlawfully removing her from the United States.

2. Ms. Doe is Congolese woman who fled her country in 2024 to escape human trafficking and sexual violence and abuse. She sought and was granted protection in the United States by a Department of Justice Immigration Judge, who granted her INA Statutory Withholding of Removal ("Withholding of Removal") on June 10, 2025.

3. Until February 14, 2026, Ms. Doe was detained by the U.S. Immigration and Customs Enforcement ("ICE") in Richwood Correctional Center, which is located in the Western District of Louisiana.

4. On February 14, 2026 (a Saturday) at approximately 11 p.m., upon information and belief, Ms. Doe was notified that she was being "moved." She was not told whether it was to another detention facility or to be removed from the United States.

5. On February 15, 2026 (a Sunday) at approximately 4 a.m., Ms. Doe, upon information and belief, was put on a deportation flight that was bound for the following countries: Senegal, Cameroon, Chad, Ghana, and Nigeria. Upon information and belief, Ms. Doe is still in constructive custody as all available information (ICE Flight tracking via https://x.com/ICEFlightM, *see* Exh. K) indicates that the plane is still in the air as of this filing.

---

[1] Plaintiff has concurrently filed a motion for pseudonym.

Counsel sought information from ICE, purportedly the Field Office Directors who "if anyone had more information, it would be them." Exh. G Hood Aff. There has been no response.

6. Ms. Doe fled the African continent due to fear that the man to whom she had been "sold" would find, torture, and kill her.

7. Neither Ms. Doe nor her counsel were given proper notice and opportunity to present fear-based claims in these third countries before her removal, as required by law. Ms. Doe does in fact fear persecution in the countries to which this deportation plane is bound.

8. In bringing this action, Ms. Doe asks this Court to:

a. Declare that Defendant's actions violated the laws of the United States and the Fifth Amendment to the U.S. Constitution.

b. Order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return her to the U.S.,[2] including ensuring that she is allowed to reenter the country without incident at a mutually agreed upon port of entry.

c. Further order Defendants to release her on an Order of Supervision ("OSUP").[3]

d. Order Defendants to remunerate her for any expenses she incurred because of wrongful removal.

---

[2] Ms. Doe must be returned to the United States although two of the countries where she could be flown, Chad and Republic of the Congo, are considered "High-Risk" countries from which full restrictions prevent entry into the United States. Ms. Doe must be returned even if she is taken to a country on that list. *See* Exh. H.

[3] Any detention of immigrants with final orders of removal is authorized and limited by 8 U.S.C sec. 1231, the statute governing detention following an order of removal ("post-order detention.") 8 U.S.C. sec. 1231 authorizes the detention of individuals following a final order of removal only under specifically delineated circumstances. The third subclause of 8 U.S.C. sec. 1231(a)(3) provides that an individual who is not removed within a 90-day statutory removal period "*shall* be subject to supervision" (emphasis added) under specific terms, including requirements that she appear periodically before an immigration officer and obey any written restrictions. Ms. Doe has been detained for over a year (January 2025 – February 2026), well over the 90-day period.

## JURISDICTION AND VENUE

9. This Court has jurisdiction to hear this case under 28 U.S.C. § 2201, the Declaratory Judgment Act; 28 U.S.C. § 1331, Federal Question Jurisdiction; 28 U.S.C. § 1346(a)(2), because the individual Defendants are United States officials; and 28 U.S.C. §1361, as a civil action seeking to compel an officer, employee, or agency to perform a duty to Plaintiff.

10. The Court has authority to enter a declaratory judgment and to provide temporary, preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, 28 U.S.C. §§ 2201-2202, the All Writs Act, and the Court's inherent equitable powers.

11. Venue lies in this District because Plaintiff last resided in this District and Defendants are associated with agencies or officers of the United States sued in their official capacities. 28 U.S.C. § 1391(e)(1).

## PARTIES

12. Petitioner **Jane Doe** is a 30-year-old Congolese woman sought and received the protection of Withholding of Removal based on feared persecution. She received Withholding from Removal relief on June 10, 2025She was most recently detained at Richwood and has been detained in ICE custody for approximately one year—since January 2, 2025.

13. Defendant **Donald J. Trump** is named in his official capacity as President of the United States of America. In this role, he is ultimately responsible for the policies and actions of the executive branch—including those of the Department of Homeland Security ("DHS"), under which ICE operates. As such, he was a legal custodian of Petitioner and is responsible for her removal.

14. Defendant **Kristi Noem** is named in her official capacity as the Secretary of DHS. As DHS Secretary, Defendant Noem is responsible for the administration of immigration laws and policies pursuant to 8 U.S.C. § 1103. She supervises DHS's components including ICE and, as such, she was a legal custodian of Petitioner and is responsible for her removal.

15. Defendant **Todd Lyons** is named in his official capacity as the acting ICE Director and Senior Official Performing the Duties of the Director. He is the head of the federal agency responsible for all immigration enforcement in the United States. He issued unconstitutional guidance to ICE related to the detention of individuals who received withholding relief.

16. Defendant **Scott Ladwig** is named in his official capacity as the Acting ICE Field Director of the New Orleans Field Office of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations. Respondent Ladwig oversees ICE's enforcement and removal operations in the New Orleans area of responsibility, which includes Louisiana.

17. Defendant **Pamela Bondi** is named in her official capacity as the Attorney General of the United States. As Attorney General, Defendant Bondi is responsible for the administration of immigration laws pursuant to 8 U.S.C. § 1103(g). She is legally responsible for administering Petitioner's removal proceedings, including the standards used in those proceedings, and as such, she was Ms. Doe's legal custodian.

18. Defendant **Marco Rubio** is named in his official capacity as the Secretary of State of the United States. As Secretary of State, Defendant Rubio is responsible for diplomatic relations and the facilitation of third county removals with countries who have Third Country Transfer Agreements, as such he was responsible for Ms. Doe's removal. He is the individual ultimately responsible for allowing Ms. Doe to reenter the United States, now that she has been unlawfully removed.

**RELEVANT STATEMENT OF FACTS AND PROCEDURAL HISTORY**

19. Ms. Doe is a citizen of the Democratic Republic of Congo. Exh. B ¶ 1.

20. At the age of fourteen, she was sold and forced to become a powerful politician's sixth "wife" to repay a family debt. For the next ten years, she was physically and sexually abused by her "husband" and two of his sons. Exh. B ¶¶ 2, 5. She was frequently raped and forced to have children and was kept like a hostage.

21. In late 2024, Ms. Doe escaped to her parents' house. Exh. B ¶ 7. In retaliation, her husband and trafficker beat her and her brother and ordered his bodyguards to execute her father in front of her. *Id.*

22. When Ms. Doe reported the incident to the police, they told her that her abuser was too powerful and that they could not protect her. They advised her to flee the country. *Id.* ¶ 9.

23. Ms. Doe went into hiding and fled the DRC with the help of her brother and his employer, who in secret obtained travel documents and plane tickets to Brazil. *Id.* ¶ 10.

24. Ms. Doe's abuser continued to track her abroad. Within an hour of arriving in Brazil, Ms. Doe received a Whatsapp message from her abuser stating he knew she was in Brazil and had "eyes everywhere." He threatened to kill her. *Id.* ¶ 11.

25. Fearing for her life, Ms. Doe fled through twelve countries and even traversed the jungle of the Darién gap on foot, hoping to make it to the United States where she believed human rights were respected. *Id.*

26. Ms. Doe entered the United States of America around January 2, 2025, and immediately asked for asylum. She was detained at Richwood Correctional Facility in Monroe, Louisiana. She was granted the protection of Withholding of Removal on June 10, 2025, which became a

final order July 10, 2025 when the government did not appeal Exh. A, Order of the Immigration Judge dated June 10, 2025.

27. Ms. Doe supplied through counsel evidence as to her fear in proposed third countries when ICE communicated with her (not counsel) they were considering Spain, Canada and Guatemala. Ms. Doe reasonably fears persecution, torture and death in these third countries, as she explained. *See* Exh. B, Exh. C Sanctuary for Families Letter sent to ICE on June 27, 2025 (hereinafter "June 27, 2025 SFF Letter"); Exh. D Sanctuary for Families Letter sent to ICE on August 11, 2025 (hereinafter "August 11, 2025 SFF Letter"); Exh. E Sanctuary for Families Letter sent to ICE October 6, 2025 (hereinafter "October 6, 2025 SFF Letter"). No information about any third country possibility was communicated since October, 2025. Not to Ms. Doe, not to counsel.

28. Ms. Doe's husband and trafficker is a powerful politician in the DRC, and his family frequently travels to Canada, Spain, the UK, France, and many countries throughout the African continent. When Ms. Doe arrived in Brazil in late 2024, her trafficker located her phone within an hour and threatened to kill her. *Id.* ¶ 11. Her unlawful removal means her life is in grave danger.

**LEGAL BACKGROUND**

29. Ms. Doe has the right to receive "notice . . . within a reasonable time and in such a manner as will allow [her] to actually seek . . . relief . . . before [] removal occurs." *Trump v. J.G.G.*, 604 U.S. 670 at *683 (Apr. 7, 2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Absent this notice, she cannot raise a fear-based claim under the provisions that enshrine her rights to do so, rendering her right to procedural due process—to which she is

entitled—utterly meaningless. *See*, e.g., 8 U.S.C. § 1231(b); 8 U.S.C. 1225(b)(1)(A)(ii); 8 C.F.R. § 208.16; 8 C.F.R. § 208.31; Reno, 507 U.S. at 306.

30.     Meaningful notice and opportunity to present a fear-based claim prior to deportation to a country where a person fears persecution or torture are fundamental due process protections under the Fifth Amendment. See, e.g., *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). And, consistent with the above authorities and practices, at oral argument in Jo*hnson v. Guzman Chavez*, No. 19-897 (Jan. 11, 2021), the Assistant to the Solicitor General represented that the government must provide a noncitizen with notice and an opportunity to present fear-based claims, before that noncitizen can be deported to a non-designated third country. *See* Tr. of Oral Argument at 20-21, Johnson, 594 U.S. 523; Tr. of Oral Argument at 33, Riley, 23-1270 (2025) ("We would have to give the person notice of the third country and give them the opportunity to raise a reasonable fear of torture or persecution in that third country.").[4]

31.     In recent months, the government has stopped complying with its legal obligations and has deported noncitizens to third countries without notice or opportunity to present their reasonable fear claims. In an attempt to bypass these protections, on March 30, 2025, the government issued an informal procedural policy memo that blatantly contravenes regulations, statutes and due process principles governing third country removals.[5]  A district court in Massachusetts issued a class-wide temporary restraining order ("TRO") and then a preliminary injunction to protect impacted noncitizens facing summary removals to third countries where

---

[4] Oral Argument Transcript at 33, *Riley v. Bondi*, No. 23-1270, (U.S. Sup. Ct. Mar. 24, 2025), https://www.supremecourt.gov/oral_arguments/argument_transcripts/2024/23-1270_c0n2.pdf.

[5] U.S. Dep't of Homeland Sec., *Guidance Regarding Third Country Removals* (Mar. 30, 2025), https://immigrationlitigation.org/wp-content/uploads/2025/04/43-1-Exh-A-Guidance.pdf; *See also* Maria Sacchetti, et al, *ICE memo outlines plan to deport migrants to countries where they are not citizens*, WASH. POST (July 13, 2025), https://www.washingtonpost.com/immigration/2025/07/12/immigrants-deportations-trump-ice-memo/ ("Federal immigration officers may deport immigrants to countries other than their own, with as little as six hours' notice, even if officials have not provided any assurances that the new arrivals will be safe from persecution or torture, a top official said in a memo.").

they have genuine fear-based claims. *See D.V.D. v. DHS*, 778 F. Supp. 3d 355 (D. Mass. 2025) ("*D.V.D.*").

32. Even after the *D.V.D.* preliminary injunction was issued, the government defied the district court's orders and sought to summarily remove individuals to third countries such as to a maximum security prison in El Salvador, to Libya, and to South Sudan—without affording them their legally required opportunity to seek mandatory protection from those third countries with the assistance of counsel.

33. On June 23, 2025, the Supreme Court issued a summary order granting the government's application to stay the nationwide *D.V.D.* injunction. Therefore, at present, there is no longer a separate court order in place to help protect the rights of *D.V.D.* class members, like Ms. Doe, to fully present their mandatory protection claims, with assistance of counsel, prior to removal to third countries. *D.V.D.* remains pending before the District Court in Massachusetts.

34. On July 9, 2025, Defendant Lyons issued guidance to all ICE employees implementing the March 30, 2025, memo. S*ee* Exh. I Memo by Todd M. Lyons, Acting Director, to All ICE Employees, Re: Third Country Removals Following the Supreme Court's Order in *Dep't of Homeland Sec. v. D.V.D.,* 145 S.Ct. 2153 (2025), dated July 9, 2025 ("Third Country Removal ICE Memo").

35. Ms. Doe was not given a reasonable fear interview, as required by law, concerning her removal to any third country—despite her repeated proclamations of fear to ICE about any such attempted removal. *See* Exh. B, Exh. C, Exh. D, Exh. E, Exh. F, and Exh. G.

36. Ms. Doe's procedural due process rights were violated under the Administrative Procedures Act ("APA"),[6] and the *Accardi* doctrine.[7] Defendants did not afford Ms. Doe appropriate statutory process—including by failing to provide adequate notice, by failing to provide adequate notice to counsel of developments in her case, and by failing to conduct reasonable fear interviews concerning removing her to a third country. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (holding that due process clause requires meaningful notice or opportunity to challenge one's detention or meaningful process to contest detention); *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007) ("The *Accardi* doctrine 'stands for the unremarkable proposition that an agency must abide by its own regulations.'")

37. In assessing a procedural due process violation, courts weigh three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or safeguards would entail. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

38. All three factors are satisfied here. As to the first factor, Ms. Doe's life is the ultimate private liberty interest and is now under substantial threat of irreparable harm. See *Kostak v. Trump et al.*, 2025 WL 2472136 at *3 (W.D. La. Aug. 27, 2025). As to the second factor, Ms. Doe's removal in the dark of night, at 4 a.m. Sunday February 15, 2026 is an erroneous extreme deprivation of her rights, she is at risk of further persecution by her husband and trafficker, and faces likely death at his hands, as he has threatened to do many times. *See.* Exh. B, Exh. C, Exh.

---

[6] 5 U.S.C. §§ 551–559.
[7] *See Accardi v. Shaughnessy*, 347 U.S. 260, 266 (1954) (agencies can be held accountable to their own codifications of procedures and policies, particularly those that affect individual rights).

D, Exh. E, and Exh. G. As to the third factor, there is no governmental interest in violating the laws of the United States.

39. Importantly, for the past eight months, Defendants have refused to communicate with Ms. Doe's counsel, despite having been aware of the representation since at least June 27, 2025. *See* Exh. C June 27, 2025 SFF Letter; Exh. F Medalla Aff. Defendants communicate—if at all—solely with Petitioner: a high school graduate with no legal training who is a native French speaker and knows only limited English. In some instances, like ICE's most recent custody determination, no reasoning or written decision is provided. Exh. G Hood Aff. ¶ 9. This does not provide Ms. Doe meaningful notice or opportunity to respond. By excluding counsel from the equation and refusing to engage with her attorneys, Defendants have committed abhorrent behavior violating Ms. Doe rights. *See* F Medalla Aff , Exh. G Hood Aff.

40. Ms. Doe is entitled to legal process to document her fear-based claims including, but not limited to, a reasonable fear interview concerning any potential third country. Such interviews have not taken place. Thus, Defendants took the extraordinary and illegal measure of violating her right to notice and a meaningful opportunity to respond and essentially disappearing her into the night. Under our Constitution, this cannot stand.

## CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF PROCEDURAL DUE PROCESS, U.S. CONST. AMENDMENT V

41. Ms. Doe incorporates the foregoing paragraphs by reference.

42. Ms. Doe has a procedural due process right to not be removed to a third country where she fears persecution, and had no procedural process to seek such relief from removal.

43. As set forth above, Defendants removed Ms. Doe under the dark of night to an unknown country, possibly Senegal, Cameroon, Chad, Ghana, or Nigeria, violating her procedural due process rights under the Fifth Amendment to the U.S. Constitution.

44. Defendants violations of law, as set forth herein, is causing Ms. Doe irreparable harm each day she spends outside of the United States.

45. Ms. Doe respectfully asks the Court to immediately order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return Plaintiff to the United States.

### COUNT II: VIOLATION OF SUBSTANTIVE DUE PROCESS, U.S. CONST. AMENDMENT V

46. Ms. Doe incorporates the foregoing paragraphs by reference.

47. Ms. Doe has a substantive due process right under the Fifth Amendment to the U.S. Constitution not to be subjected to government conduct that shocks the conscience. Defendants' conduct as set forth above violates that right.

48. Defendants' actions, as set forth herein, which shock the conscience, are causing Ms. Doe irreparable harm each day she spends outside the United States.

### COUNT III: ADMINISTRATIVE PROCEDURE ACT 5 U.S.C. § 706(2)(A)

49. Ms. Doe incorporates the foregoing paragraphs by reference.

50. The Administrative Procedure Act provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion." 5 U.S.C. § 706(2)(A).

51. Defendants' actions as set forth herein were arbitrary, capricious, and an abuse of discretion. Further, Defendants failed to follow their own policies regarding process to be afforded persons to be removed to third countries.

52. Defendants' arbitrary and capricious actions, as set forth herein, are causing Plaintiff irreparable harm each day she spends outside the United States.

53. Ms. Doe asks the Court to immediately order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return her to the United States.

### COUNT IV: MANDAMUS ACTION, 28 U.S.C. § 1361

54. Ms. Doe incorporates the foregoing paragraphs by reference.

55. 28 U.S.C. § 1361 is a civil action seeking to compel an officer, employee, or agency of the United States to perform a duty owed to a plaintiff.

56. Defendants removed Ms. Doe to one of five countries on the African continent, placing her life in danger and violating the law and the duty that the government owed to her—to not engage in behavior that threatens her life.

57. Defendants afforded Ms. Doe with no proper notice and opportunity to be heard regarding her fears of persecution in a third country of removal.

58. Defendants are therefore required to facilitate Ms. Doe's return without incident.

### REQUEST FOR RELIEF

59. Ms. Doe prays for judgment against Defendants and respectfully requests that the Court:

a. Declare that Defendants' actions, as set forth herein, violated the laws of the United States and the Fifth Amendment to the U.S. Constitution;

b. Order Defendants to take all steps reasonably available to them, proportionate to the gravity of the ongoing harm, to return her to the United States, including ensuring that she is allowed to reenter the country without incident at a mutually agreed upon port of entry;

c. Order Defendants to release Ms. Doe on an OSUP upon her return to the United States;

d. Order Defendants to renumerate her for the costs incurred to return herself to the United States; and

e. Grant such other relief at law and in equity as justice may require.

Dated: February 16, 2026

Respectfully submitted,

*/s/* Ellen Hahn
**Ellen Hahn, Louisiana Bar No. 22406**
2223 W. St. Mary Blvd.
Lafayette, LA 70506
T: (337) 298-3831
Nellhahn2@gmail.com
*Attorney for Petitioner*

*/s/* Whitney Hood
**Whitney Hood***
Sanctuary for Families
30 Wall St. 8th Floor
New York, New York 10268
T: (212) 271-8688
whood@sffny.org

*Attorney for Petitioner*
* *motion for pro hac vice pending*